[679 NYS2d 679]

FEDERAL FINANCIAL Co., Appellant, v STANLEY LEVINE et al., Respondents.

Second Department, November 9, 1998

## APPEARANCES OF COUNSEL

*Bruce R. Bekritsky,* Mineola, for appellant.
*Herman Yellon,* Mineola, for Stanley Levine, respondent.

## OPINION OF THE COURT

KRAUSMAN, J.

The plaintiff, Federal Financial Co., an Illinois general partnership, is the assignee of a promissory note which was formerly held by the Resolution Trust Corporation (hereinafter the RTC) in its capacity as receiver for a Federally insured bank. At issue on appeal is whether the plaintiff, as assignee, is entitled to benefit from the Federal Statute of Limitations which applies to the RTC when seeking to enforce its right to collect a debt. For the reasons which follow, we hold that the Federal Statute of Limitations does apply to the plaintiff, and that this action is not time barred.

The relevant facts of this case are essentially undisputed. On December 21, 1987, the defendants, Stanley Levine and Barbara Levine, borrowed $90,000 from the Moresmere Federal Savings & Loan Association (hereinafter Moresmere). Under the terms of the promissory note evidencing the loan, the defendants agreed to repay the funds they had borrowed, with interest, in 20 quarterly installments. After the execution of the note, Moresmere was succeeded by the Metrobank for Savings, FSB (hereinafter Metrobank). When the defendants allegedly defaulted on the note in March 1990, Metrobank commenced an action against them. The defendants failed to appear in the action, and judgment was entered against them on August 21, 1991. However, on June 27, 1991, prior to the entry of the judgment, the United States Office of Thrift Supervision placed Metrobank into receivership, and appointed the RTC to be the insolvent bank's receiver.

Following its appointment, the RTC conducted a public auction to sell Metrobank's assets. At the auction, the plaintiff purchased a portfolio of debts, which included the promissory note executed by the defendants and Metrobank's judgment against them. The defendants subsequently moved to vacate the Metrobank judgment, and the Supreme Court granted their motion and dismissed the action for lack of personal jurisdiction.

Thereafter, on March 27, 1997, the plaintiff commenced the instant action to recover on the note by filing a motion for summary judgment in lieu of a complaint pursuant to CPLR 3213. Although more than six years had elapsed since the defendants' alleged default on the note, the plaintiff argued that as an assignee of the RTC, it was entitled to rely upon the limitations period set forth in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ([hereinafter FIRREA] 12 USC § 1821 [d] [14]). Under FIRREA, the applicable Statute of Limitations for actions brought by the RTC is six years, the same limitations period applicable to an action to recover on a note in New York (*see,* CPLR 213 [4]). However, in contrast to State law, the Federal Statute of Limitations begins to run from the date of the appointment of the RTC as receiver, if this date is later than the actual date upon which the cause of action accrued (12 USC § 1821 [d] [14] [B]). The defendants responded to the commencement of this action by separately cross-moving for dismissal, contending that it was barred by the New York Statute of Limitations, which began to run on March 20, 1990, when they allegedly defaulted on the note. The Supreme Court granted the defendants' separate cross motions, concluding that the extended accrual date provided by Federal statute applied only to actions directly brought by the RTC in its capacity as receiver of a failed banking institution. We now reverse.

In 1989, Congress responded to the savings and loan crisis of the 1980's by enacting FIRREA and establishing the RTC to "facilitate the efficient recovery of the assets of failed institutions" (*Twenty First Century Recovery v Mase,* 279 Ill App 3d 660, 663, 665 NE2d 573, 575). To accomplish the goal of recovering assets, the statute affords the RTC an expanded Statute of Limitations which runs from the date of its appointment as conservator or receiver of a failed banking institution (*see,* 12 USC § 1821 [d] [14]). The extended Statute of Limitations serves as "a mechanism for providing the receiver with an adequate time to pursue those claims which the financial institution could not successfully pursue prior to its failure" (*Union Recovery Ltd. Partnership v Horton,* 252 Va 418, 424, 477 SE2d 521, 524, *cert denied* 520 US 1167).

Since the Federal statute is silent as to whether the extended limitations period applies to assignees who purchase defaulted assets from the RTC, a number of courts have turned to State law and common-law principles governing assignments to resolve the issue (*see, Federal Fin. Co. v Hall,* 108 F3d 46 [4th Cir 1997], *cert denied* 522 US 858; *Remington Invs. v Kade-*

*nacy,* 930 F Supp 446 [CD Cal 1996]; *Global Fin. Servs. v Duttenhefner,* 575 NW2d 667 [ND]; *Federal Fin. Co. vGerard,* 89 Wash App 445, 949 P2d 412; *UMLIC 2 Funding Corp. v Butcher,* 333 Ark 442, 970 SW2d 211). Nearly all of the courts which have considered this issue have extended the Federal limitations period to assignees *(see, e.g., United States v Thornburg,* 82 F3d 886 [9th Cir 1996]; *Federal Deposit Ins. Corp. v Bledsoe,* 989 F2d 805 [5th Cir 1993]; *Bruin Holdings v Moderski,* 960 F Supp 62 [MD Pa 1996]).

In New York, the common-law principle that an assignee steps into the shoes of its assignor *(see, Trisingh Enters. v Kessler,* 245 AD2d 45) is codified by UCC 3-201 (1), which provides that the "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein". Recently, in *National Enters. v Caccia* (252 AD2d 398), the Appellate Division, First Department, relying upon UCC 3-201 (1), concluded that the right to benefit from the Federal limitations period is among the rights that are transferred upon the assignment of a note by the RTC. The First Department's conclusion, which relies upon New York commercial law, is also consistent with the legislative goal of FIRREA. Extending the benefit of the Federal Statute of Limitations to purchasers of defaulted assets furthers the statute's purpose because it enhances the marketability of these assets by permitting purchasers a longer period of time to bring suit *(see, Federal Deposit Ins. Corp. v Bledsoe, supra,* at 811). Conversely, relegating assignees to State Statutes of Limitation " 'would serve only to shrink the private market for the assets of failed banks * * * [and] require the [receiver] to hold onto and prosecute all notes for which the state statute of limitations has expired because such obligations would be worthless to anyone else. This runs contrary to the policy of allowing the [receiver] to rid the federal system of failed bank assets' " *(Federal Deposit Ins. Corp. v Bledsoe, supra,* at 811; *Fall v Keasler,* 1991 WL 340182 [ND Cal, Dec. 18, 1991, Williams, J.]).

Although a Federal District Court in Virginia has held that the right to rely upon the extended limitations period arises solely from the RTC's status as conservator or receiver and is therefore a "personal" right which is not assignable *(WAMCO, III, Ltd. v First Piedmont Mtge. Corp.,* 856 F Supp 1076 [ED Va 1994]), its rationale has not been followed by the other appellate courts which have ruled on this issue, including the

Virginia State Supreme Court (see, *Union Recovery Ltd. Partnership v Horton*, 252 Va 418, 424, 477 SE2d 521, 524, *cert denied* 520 US 1167, *supra; see also, Global Fin. Servs. v Duttenhefner*, 575 NW2d 667 [ND], *supra; Federal Fin. Co. v Gerard*, 89 Wash App 445, 949 P2d 412, *supra; Twenty First Century Recovery v Mase, supra*). These courts have concluded that the Federal receiver's right to sue within the extended limitations period is inherent in its possession of the instruments it holds, and is among the rights, remedies, and benefits which are incidental to the instrument assigned, rather than merely a right personal to the assignor only (see, *Union Recovery Ltd. Partnership v Horton, supra; Global Fin. Servs. v Duttenhefner, supra; Federal Fin. Co. v Gerard, supra*). The WAMCO court's reasoning has also been rejected by the Fourth Circuit Court of Appeals, which recently applied Virginia law to reach the conclusion that the FIRREA limitations period applies to assignees (see, *Federal Fin. Co. v Hall*, 108 F3d 46 [4th Cir 1997], *cert denied* 522 US 858, *supra*). We therefore conclude that the sound weight of authority supports extending the Federal Statute of Limitations to purchasers of defaulted notes, and rejecting the minority view that the Federal limitations period is personal to the receiver and does not inure to the benefit of assignees.

Applying the Federal Statute of Limitations to the instant case, it is undisputed that the RTC was appointed receiver of Metrobank on June 27, 1991. Since the Federal limitations period runs from the date of the appointment of the receiver, the plaintiff's action, commenced on March 27, 1997, is not time barred. Accordingly, the order is reversed insofar as appealed from, on the law, the defendants' cross motions are denied, and the action is reinstated.

RITTER, J. P., SANTUCCI and ALTMAN, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, the defendants' cross motions are denied, and the action is reinstated.